FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2017 DEC 18 AM 11: 05

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In re Personal Restraint Petition of | ) | No. 73186-6-I |
|  | ) |  |
| EDWARD JAMES HILLS, | ) | DIVISION ONE |
|  | ) |  |
| Petitioner. | ) |  |
|  | ) | UNPUBLISHED |
|  | ) |  |
|  | ) | FILED: December 18, 2017 |
|  | ) |  |

Cox, J. — The King County Superior Court transferred Edward Hills's CrR 7.8(c)(2) motion to this court for consideration as a personal restraint petition. Hills fails in his burden to show that the United States Supreme Court's opinion in Missouri v. McNeely should apply retroactively to his November 2007 convictions.[1] Accordingly, we dismiss this petition.

Hills is currently incarcerated based on the November 2007 convictions for vehicular homicide and vehicular assault.[2] While driving under the influence of marijuana, he ran a red light and crashed into another vehicle.[3] His passenger

---

[1] 569 U.S. 141, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013).
[2] State v. Hills, noted at 149 Wn. App. 1052, slip op. at 1 (2009).
[3] Id.

was killed in the collision.[4] Police arrived and took Hills to Harborview Medical Center.[5]

There, a police officer had Hills's blood tested without either a warrant or Hills's consent.[6] At the time, former RCW 46.20.308(3) (2006) permitted police to take a nonconsensual, warrantless blood draw from persons under arrest for vehicular homicide. The test results showed that Hills was intoxicated over the legal limit.

These test results together with other evidence of intoxication were admitted into evidence at the bench trial that followed.[7] The trial court found Hills guilty as charged and entered a judgment and sentence for the two convictions.[8] Following judicial review of the trial court's decision, his case became final on December 8, 2009.

After that date, the United States Supreme Court decided McNeely.[9] That decision held that "the natural metabolization of alcohol in the bloodstream [did not] present[] a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases."[10] Thus, the Fourth Amendment barred warrantless blood draws, justified on no other basis than the defendant's intoxication and arrest.[11] Rather,

---

[4] Id.
[5] Id.
[6] Id. at 2.
[7] Id.
[8] Id. at 3.
[9] 569 U.S. 141.
[10] Id. at 144.
[11] Id. at 147-48.

2

the Court explained that whether such an exigency exists depends on the totality of circumstances in any given case.[12]

In November 2014, Hills moved for relief from judgment or order pursuant to CR 7.8(c)(2). He contended that McNeely rendered former RCW 46.20.308(3) (2006) unconstitutional, that it applied retroactively to exclude the blood draw results in his case, and that his convictions could not stand absent those results. The superior court transferred the motion to this court for consideration as a personal restraint petition.

## RETROACTIVE APPLICATION

The dispositive question is whether McNeely applies retroactively to this case on collateral review. Hills argues that it does. We disagree.

Washington law favors the finality of criminal judgments.[13] Thus, the availability of collateral relief is limited.[14] A personal restraint petitioner must first overcome certain statutory and rule based procedural bars. RCW 10.73.090(1) generally prohibits a defendant from collaterally attacking his judgment and sentence more than one year after it becomes final. A judgment and sentence is final when the defendant has exhausted his right of direct appeal and the time for filing a petition for certiorari has passed or a timely petition has been denied.[15]

There are exceptions to the one year bar. It does not apply when "[t]here has been a significant change in the law, whether substantive or procedural,

---

[12] Id. at 149.

[13] In re Haghighi, 178 Wn.2d 435, 448, 309 P.3d 459 (2013).

[14] In re Pers. Restraint of St. Pierre, 118 Wn.2d 321, 329, 823 P.2d 492 (1992).

[15] Id. at 327.

which is material to the conviction, sentence, or other order [and] . . . a court . . . determines that sufficient reasons exist to require retroactive application."[16]

Here, Hills's case is indisputably final. Hills exhausted his state appellate rights when the supreme court denied his petition for review on September 9, 2009. The time in which he might have filed for certiorari in the United States Supreme Court passed 90 days later, on December 8, 2009.[17] Thus, the exception stated above must apply before this court may review this petition.

McNeely presents a "significant change in the law." It rendered a previous state statute, RCW 46.20.308(3), unconstitutional prompting the legislature to amend the statute. No longer can police draw a person's blood without a warrant merely because the person has been arrested for vehicular homicide.

Further, that change is material to Hills's conviction because it alters the procedural standard governing whether his blood could have been tested and the results admitted into evidence at trial. The remaining question is whether sufficient reasons exist to require retroactive application.

In considering whether a newly articulated legal rule applies retroactively, Washington courts apply the United States Supreme Court's analysis in Teague v. Lane.[18] We do so here.

Under this analysis, a new rule applies to any case upon direct review.[19] In determining whether it applies on collateral review, we ask whether the case is

---

[16] RCW 10.73.100(6).

[17] U.S. SUPREME COURT RULE 13.1, 13.3.

[18] Haghighi, 178 Wn.2d at 441 (citing Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)).

[19] Id. at 442.

4

final and the rule is new. If the rule is new, we ask whether it fits within either of two exceptions.[20]

First, we ask whether the case was final when the rule was announced.[21] If the case was not final, then the rule will generally apply on direct review.[22] If the case was final, retroactive application will be more limited. As we previously noted, Hills's case was final.

Second, we ask whether the relevant rule is "new."[23] A "new rule" is one that "'breaks new ground or imposes a new obligation on the States or . . . was not *dictated* by precedent existing at the time the defendant's conviction became final.'"[24] Thus, even a decision that merely "'extends the reasoning of . . . prior cases'" can be new where state courts had disagreed in applying those prior federal cases.[25] A rule, about which reasonable jurists could have disagreed before its announcement, is new.[26]

The rule in McNeely is new. It newly obligates state police officers, absent valid consent, to either obtain a warrant or demonstrate that the totality of the circumstances present an exigency justifying a warrantless blood draw. No longer does mere intoxication and arrest justify a warrantless blood draw.

---

[20] Beard v. Banks, 542 U.S. 406, 411, 124 S. Ct. 2504, 159 L. Ed. 2d 494 (2004).
[21] Id.
[22] Haghighi, 178 Wn.2d at 443.
[23] Beard, 542 U.S. at 411.
[24] Teague, 489 U.S. at 301.
[25] Graham v. Collins, 506 U.S. 461, 467, 113 S. Ct. 892, 122 L. Ed. 2d 260 (1993) (quoting Saffle v. Parks, 494 U.S. 484, 488, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990)).
[26] Haghighi, 178 Wn.2d at 443.

Although McNeely drew in part from the Supreme Court's precedent in Schmerber v. California,[27] that earlier case did not dictate the later decision. This is evidenced by McNeely's recognition that a split of authority existed on whether the dissipation of alcohol presented a per se exigency justifying warrantless blood draws.[28] Prior to McNeely, several states, including Washington, had permitted such blood draws in impaired driving cases.[29] McNeely changed this.

Third, if the rule is new, then we must ask whether it falls within either of two exceptions.

The first exception to this principle encompasses substantive rules. These rules place certain private primary conduct beyond the State's power to punish or they "'prohibit[] a certain category of punishment for a class of defendants because of their status or offense.'"[30]

The second exception concerns procedural rules. Such rules "raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise."[31] Only a small set of "watershed rules of criminal procedure" apply retroactively.[32] These few rules are those "implicit in

---

[27] 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) (cited in McNeely, 569 U.S. at 150-51).

[28] 569 U.S. at 147.

[29] See State v. Judge, 100 Wn.2d 706, 712, 675 P.2d 219 (1984).

[30] Montgomery v. Louisiana, 136 S. Ct. 718, 728, 193 L. Ed. 2d 599 (2016) (quoting Penry v. Lynaugh, 492 U.S. 302, 330, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989)).

[31] Schriro v. Summerlin, 542 U.S. 348, 352, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004).

[32] Saffle, 494 U.S. at 495 (quoting Teague, 489 U.S. at 311 (plurality opinion)).

the concept of ordered liberty."[33] Such a rule "must be one 'without which the likelihood of an accurate conviction is *seriously* diminished.'"[34] It must further "'alter our understanding of the *bedrock procedural elements*' 'essential to the fairness of a proceeding.'"[35] The Supreme Court has only found one rule, that pronounced in Gideon v. Wainwright,[36] sufficient to satisfy this exception, and has used this example to illustrate the exception's extremely narrow scope.[37]

The McNeely rule is not a substantive rule within the first exception. It neither alters the elements of the crime for which Hills was convicted nor places him beyond the court's sentencing authority. Instead, it modifies the procedures law enforcement must follow in taking blood draws, based upon the Fourth Amendment.

As a procedural rule, the McNeely rule will only apply retroactively if it seriously improves the accuracy of criminal proceedings and alters the bedrock of procedural fairness. It does neither.

First, it does not improve accuracy because it does not change the evidence available at trial. Police may still obtain a warrantless blood draw if the totality of circumstances presents an exigency. If the circumstances do not, police may apply for a warrant at the scene of the crime or shortly thereafter. So long as probable cause exists, the police may obtain a warrant and quickly

---

[33] St. Pierre, 118 Wn.2d at 326.
[34] Schriro, 542 U.S. at 352 (quoting Teague, 489 U.S. at 313).
[35] State v. Evans, 154 Wn.2d 438, 445, 114 P.3d 627 (2005) (quoting Sawyer v. Smith, 497 U.S. 227, 242, 110 S. Ct. 2822, 111 L. Ed. 2d 193 (1990)).
[36] 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).
[37] Beard, 542 U.S. at 417.

conduct a blood draw. Tellingly, the McNeely court never stated that its rule would improve accuracy.

Second, the scope of this new rule's applicability is extremely narrow, applying only to offenses that include an impaired driving element. Thus, this specific rule does not affect the very bedrock of criminal procedure as did the rule in Gideon.

Accordingly, we conclude that the rule announced in McNeely does not apply retroactively to Hills's case.

Hills contends that this analysis is inapplicable because no retroactive analysis is necessary. Rather, he argues that McNeely simply clarified what former RCW 46.20.308(3) (2006) had always meant. We reject this contention.

Hills relies on In re Personal Restraint of Johnson,[38] for this proposition. But that case does not assist him.

There, John Johnson was convicted of murder.[39] The sentencing court calculated his offender score at 2, based on two prior convictions.[40] After the first of those prior convictions, he had been placed on probation.[41] After the second, his probation was revoked and he served both sentences concurrently.[42] The sentencing court in his murder case had counted each prior conviction separately.[43]

---

[38] 131 Wn.2d 558, 933 P.2d 1019 (1997).
[39] Id. at 561.
[40] Id.
[41] Id.
[42] Id. at 561-62.
[43] Id. at 562.

Several years later, the state supreme court issued a decision holding that for offenses committed before a certain date, a revoked probation would merge with a conviction served concurrently.[44] Thus, Johnson's offender score would have been 1 under this new rule.[45] He filed a PRP on this basis.[46]

The supreme court granted his petition, explaining that "when Johnson was sentenced, the law with respect to calculation of his offender score required his score to be a 1."[47] It reached this conclusion by applying the later case retroactively, explaining that "[o]nce the Court has determined the meaning of a statute, that is what the statute has meant since its enactment."[48]

Johnson concerned the retroactive application of a statutory interpretation. When the supreme court interprets a statute, that statute is considered to have always carried that interpretation.[49]

But that is not the issue here. Rather, this case turns on whether a federal decision applies retroactively to constitutionally invalidate a former state statute. The meaning of a statute as opposed to its constitutionality under the federal constitution are not the same.

Because the McNeely rule does not apply retroactively, Hills cannot overcome the one year bar in RCW 10.73.090(1). Thus, his personal restraint petition is untimely.

---

[44] Id. at 562-63.
[45] Id. at 563.
[46] Id.
[47] Id. at 568.
[48] Id.
[49] Id.

Because the question of retroactivity is dispositive, we need not reach the other arguments of the parties.

We dismiss this personal restraint petition.

_____ Cox, J.

WE CONCUR:

_____          _____ Mann, J.